GULF, C. & S. F. RY. CO. v. RODRIQUEZ.
(No. 8320.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 12, 1916. Rehearing Denied March 18, 1916.)

1. TRIAL ☞133(1)—DISCRETION OF COURT.
    It is within the discretion of the trial court to require the jury to disregard any statements or inferences as to why plaintiff did not bring suit in another county.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. ☞133(1).]

2. TRIAL ☞191(1)—INSTRUCTIONS—ASSUMPTION OF FACTS.
    A charge which assumed the existence of facts on which the evidence was conflicting was properly refused.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420, 421, 435; Dec. Dig. ☞191(1).]

3. CARRIERS ☞229(1) — CARRIAGE OF LIVE STOCK—INJURY BY DELAY.
    Where the plaintiff's cattle had been injured by a wreck and consequent delay during transportation by a carrier, he was not required to accept an unfavorable opportunity for sale, but was entitled to a reasonable time to prepare them, and an opportunity to sell them in the open market.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963; Dec. Dig. ☞229(1).]

4. APPEAL AND ERROR ☞930(4) — REVIEW — PRESUMPTIONS—VERDICT.
    In an action against a carrier for damages to cattle by wreck and consequent delay in transportation, where plaintiff sought to recover for only 300 out of 422 bales of hay purchased to feed the cattle from Saturday until Monday, it will be assumed that the jury in estimating the damages took into account the fact that it was customary for shippers, immediately upon the arrival of cattle for sale, to feed and water them at their own expense, at least once.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3760, 3761; Dec. Dig. ☞930(4).]

5. TRIAL ☞260(10)—INSTRUCTIONS.
    An instruction is not objectionable for failing to discuss element of damages fully covered in other portions of the charge.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 659; Dec. Dig. ☞260(10).]

6. CARRIERS ☞230(12) — CARRIAGE OF LIVE STOCK—INSTRUCTIONS.
    In an action against a carrier for damage to cattle by delay in transportation, an instruction, that the plaintiff might recover for any extra shrinkage and bad appearance was not improper as misleading, in that it mixed two elements of damage, since they are so nearly similar in character as to be substantially a common cause of loss.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 961; Dec. Dig. ☞230(12).]

7. CARRIERS ☞230(12) — CARRIAGE OF LIVE STOCK—DELAY IN TRANSPORTATION.
    In an action against a carrier for damages to cattle by delay in transportation, where there was evidence that cattle subjected to delay would lose in weight, and that such delay with confinement in the cars would also cause the cattle to present a bad appearance, which would affect their selling price, an instruction that the plaintiff might recover for any extra shrinkage and bad appearance found to exist was proper.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 961; Dec. Dig. ☞230(12).]

8. TRIAL ☞296(1)—INSTRUCTIONS.
    An instruction is not erroneous as confusing, if unobjectionable when read in connection with other instructions given.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–707; Dec. Dig. ☞296(1).]

9. CARRIERS ⊙═230(12) — CARRIAGE OF LIVE STOCK—INSTRUCTIONS—DELAY IN TRANSPORTATION.

In an action against a carrier for damages to cattle by delay in transportation, where there was evidence that a train wreck and consequent delay and confinement for 12 hours caused loss in weight and depreciation in appearance, an instruction that the plaintiff was entitled to recover, although he was able to sell immediately upon arrival, was proper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 961; Dec. Dig. ⊙═230(12).]

10. CARRIERS ⊙═228(3) — CARRIAGE OF LIVE STOCK — EVIDENCE AS TO FORMER SHIPMENTS.

In an action against a carrier for damages to cattle by delay in transportation, in the absence of evidence that other shipments by the plaintiff were subjected to the same conditions as the shipment in question, evidence of the result to those shipments was inadmissible.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. ⊙═228(3).]

11. APPEAL AND ERROR ⊙═1048(1)—REVIEW—HARMLESS ERROR.

In an action against a carrier for damages to cattle by delay in transportation, failure by the plaintiff to answer questions as to other shipments made by him, on the ground that it had nothing to do with the case, that he did not have his books, and that he did not care to disclose his business, was not prejudicial error, as it would have no weight to discredit or weaken his testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140, 4144; Dec. Dig. ⊙═1048(1).]

12. APPEAL AND ERROR ⊙═1050(1)—REVIEW—HARMLESS ERROR.

Where like evidence had been admitted without objection, the error in admitting evidence complained of was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Dec. Dig. ⊙═1050(1).]

13. APPEAL AND ERROR ⊙═1048(6)—REVIEW—HARMLESS ERROR.

The admission of testimony on cross-examination which tended to contradict inferences to be drawn from the testimony of the same witness on direct examination was not prejudicial error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4145; Dec. Dig. ⊙═1048(6).]

Appeal from District Court, Denton County; C. F. Spencer, Judge.

Action by Bertola Rodriquez against the Gulf, Colorado & Santa Fé Railway Company. Judgment for the plaintiff, and defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, and Lee, Lomax & Smith, of Ft. Worth, for appellant. J. A. Templeton, of Ft. Worth, for appellee.

CONNER, C. J. Appellee instituted this suit to recover damages for injuries to 700 head of his cattle shipped by water from Tampico, Mex., to Galveston, Tex., and from thence over the line of the appellant railway to Ft. Worth. The proof supports the conclusion that no complaint of the treatment of the shipment can successfully be made un-

til the train arrived at a point some 90 to 100 miles south of Ft. Worth, where a wreck occurred. It was alleged, and appellant seems to make no contest on this point, that the wreck was the result of negligence on the part of appellant's employés; and the plaintiff charged that, by reason of the collision, the cattle were knocked down, bruised, delayed some 12 or more hours, causing loss in weight, deterioration in appearance, and loss in market price. The real contest below was over the injuries to the cattle and the amount of damages, if any, to which appellee was entitled, but the jury returned a verdict in appellee's favor for the sum of $1,195, and judgment was entered accordingly.

[1] During the course of the trial the court gave the following special instruction, to which error is first assigned:

"You are instructed that the plaintiff in law had the right to bring this suit in this court, and that you will not consider any statements or inferences about why he did so bring it, and the fact of its being brought here cannot be considered by you for any purpose."

The circumstances under which the charge was given are substantially as follows: The plaintiff's suit was instituted in Denton county rather than in Tarrant county, where it might also have been properly instituted; the testimony of the principal witnesses in behalf of the plaintiff as to the character and extent of the injuries to the cattle, the depreciation in their appearance and weight, and to a decline in the market which resulted from the delay charged, was by deposition; and counsel for appellant, in his argument before the jury, referred to these facts, whereupon counsel for appellee objected to any comment on the suit being brought in Denton county. Appellant's counsel then insisted upon his right to suggest to the jury and leave it to them to determine whether or not plaintiff may have been actuated in bringing his suit in Denton county because in Denton county his witnesses were not known, as they doubtless were in Tarrant county, and because in Denton county plaintiff could escape any criticism for using depositions of the witnesses and not having them testify in person; whereupon the court ruled that arguments and suggestions of this kind were proper, and counsel for appellant made such argument. But thereafter, during the closing argument by counsel for appellee, when he undertook to state what he said might be the reason for bringing the suit in Denton county, starting out with reference to how many railroads entered into Tarrant county, and how many railroad employés were in Tarrant county, appellant's counsel objected to such argument, and, without ruling on such objection, the court read to the jury the special instruction complained of, and which we have quoted above.

Appellant objects to the charge because it was improper and on the weight of the evi-

dence, and insists that, inasmuch as the suit could have been brought in Tarrant county, and as the most material witnesses for plaintiff were residents of Tarrant county testifying by deposition, that his argument was legitimate and proper for the jury's consideration. While we are inclined to agree with what was said by a Georgia court of appeals in the case of Georgia, F. & A. Ry. Co. v. Sasser, 4 Ga. App. 276, 61 S. E. 505, to the effect that appellant's counsel did not exceed the bounds of legitimate argument in drawing from the facts apparent upon the trial such inferences as he thought were reasonable, and that under ordinary circumstances the effect of such argument should not have been withdrawn from the consideration of the jury, as was done by the charge objected to, yet, under the circumstances presented to us, we feel unwilling to reverse the judgment because of the action of the court noted. It is undisputed that the plaintiff's suit was properly instituted in Denton county; and in the effort to explain that fact, and thus remove the unfavorable inferences that appellant's counsel sought to establish, we think appellee's counsel was well within his rights in referring to matters constituting a part of the common history of the country, such as the numerous railroads centered in Ft. Worth and the consequent number of railway employés; and, when counsel for appellant objected to such argument, he thus in all probability provoked the court to give the instruction, with a view doubtless of thereby at once ending a controversy that was but collateral to the main issues of the case, and possibly becoming misleading or confusing.

In this connection, we will further observe that there was no attempt made to otherwise impeach appellee's witnesses, and nothing in the record indicates that they were not entitled to the usual credence by the jury. On the whole, we think the circumstance was one of those incidental matters frequently arising upon a trial, which must be left largely to the trial court's discretion, and, as indicated, we see no reversible error in the discretion exercised in this instance.

[2, 3] Appellant requested the submission of the following special charge, which was refused, and to which action on the part of the court appellant assigns error, viz.:

"It is admitted in this case that the 22 cars of cattle were unloaded in the pens at Ft. Worth, Tex., at 3:10 p. m. Saturday, July 11, 1914; it is further the undisputed evidence in this case that they could have been sold on the Saturday after they had so arrived, but that no effort was made to sell them.

"Now, if you find from the evidence that, if the said 22 cars had been sold on Saturday afternoon, they would have netted the plaintiff as much money as if they had arrived and been sold early in the day of Saturday, then you will find for the defendant as to said 22 cars of cattle; that is, you will not allow the plaintiff any damages either on account of claimed shrinkage or on account of claimed decline in market or appearance by reason of the said 22 cars being held over until Monday."

In the same connection, appellant assigns error to the second paragraph of the court's charge, which is as follows:

"If you find and believe from the evidence that said cattle arrived in Ft. Worth too late to be sold on the market of Saturday, July 11, 1914, and that by reason thereof they had to be held over for Monday's market, and you further find that the market of Monday had declined from Saturday's market, then the plaintiff would be entitled to recover the difference, if any, on account of such decline between said Saturday and said Monday. This section, however, is to be taken in connection with special charge No. 8 requested and given."

Special charge No. 8, referred to in the second paragraph of the court's charge above quoted, was given at appellant's instance, and reads:

"If you find from a preponderance of the evidence in the case that the plaintiff's cattle declined in market value from Saturday to Monday, either on account of their depreciated appearance or on account of decline in market, if you find either, and you further find, under all the instructions as given you, that plaintiff is entitled to recover on account of such decline, but if you further find from the evidence that the cattle, by reason of the feed and attention they received from Saturday until Monday, increased in weight and weighed more on Monday than they would have weighed on Saturday, then you will offset the amount of increase in value of said stock by reason of such increase in weight, figured on the basis of which the cattle sold on Monday, against such amount, if any, as you find plaintiff lost by reason of depreciation in appearance or decline in market, if any; that is to say, if the amount of increase in value by reason of increase in weight was equal to, or in excess of, the amount of loss on account of depreciated appearance, or decline in market, then you will not find for the plaintiff anything on account of such depreciation in appearance or decline in market; but if the increase in value on account of increase in weight was not equal to the loss by depreciation in appearance and decline in market, in that event you will only find for plaintiff the difference between such increase in value by reason of increase in weight and the loss in value by reason of the depreciated appearance or decline of market."

The contention made under these assignments is that, as stated in the special charge refused, the undisputed testimony shows that the cattle could have been sold upon the Saturday market, and that it constitutes error to submit as doubtful an issue as to which there is no doubt and no dispute; but we think the theory of the evidence upon which the contention is based is erroneous.

It is true that one of the witnesses, who seems not to have been contradicted, testified, in effect, that he was a purchasing agent for Swift & Co., and would upon application have purchased cattle arriving upon the Ft. Worth market at any time previous to 5 o'clock. The evidence showed that the 22 cars of the cattle in question did arrive in Ft. Worth at 3:10 p. m. on Saturday, July 11, 1914. But there was other testimony to the effect that the Saturday's market closed at about 2 p. m., at which hour the usual purchasing agents and buyers dispersed; and it ought not to be said that appellee is to be deprived of the loss in the decline of

the market shown by the testimony, between Saturday and Monday, merely because it was possible that a sale might have been made on Saturday.

The evidence fails to show that the purchasing agent so testifying remained upon the grounds as late as 5 o'clock, or that there were buyers of any kind in the purchasing yards, and appellee was not required to accept an unfavorable opportunity for a sale. It would be unreasonable to require, as some of the testimony indicates, appellee to forthwith place his cattle upon the market without reasonable time to prepare them for sale by feeding and watering them, and nothing in the evidence indicates that he could have reasonably done this in time for a fair sale on Saturday. The court's charges on the subject gave to appellant all that it could reasonably demand. The assignments in question are, accordingly, overruled.

[4] One of the items for which the plaintiff sought to recover was the sum of $195 for 300 bales of hay, which the plaintiff alleged he was forced to purchase and to feed to his cattle because of the delay in holding them from Saturday evening over until the following Monday, when they were sold. The evidence shows that, upon the arrival of the plaintiff's cattle in Ft. Worth, his agents bought 422 bales of hay of the market value of 65 cents per bale, all of which during Saturday, Sunday, and Monday, until sold, was fed to the cattle.

There was other evidence tending to show that it was customary for shippers, immediately upon the arrival of cattle for sale, to feed and water them, and there is no specific evidence which establishes the precise amount of extra hay that appellee's cattle consumed beyond the amount fed to them on their first feed, and appellant requested a specific charge reciting this fact and instructing the jury, because of it, to disregard the said item of $195. The charge was refused, and error is assigned to the action of the court in refusing it. Appellant's contention is that, before plaintiff was entitled to recover anything on the item of feed, it was necessary for him to present to the jury evidence reasonably sufficient to enable them to estimate the extent of the damage claimed on this account. The verdict of the jury is a general one, and we have no means of estimating the amount, if any, the jury may have awarded because of the extra feed necessitated by the delay of the 22 cars of cattle from Saturday to Monday, which, under the court's charge, they were authorized to find for plaintiff. But if we assume, as appellant's proposition evidently does, that plaintiff in no event was entitled to recover the amount of hay fed upon the first feed of Saturday (and this seems to be the theory of the plaintiff's allegations, for he sought to recover for 300 bales only), yet we see no reason why as to this item the common knowledge that must be supposed to be pos-

sessed by the jury would not enable them to make a proportional estimate of the amount of extra hay fed from Saturday to Monday. Nothing in the evidence tends to indicate that more hay was fed on the first feed Saturday than on the second, or on any feed of Sunday or Monday, and it may be fairly assumed that the jury, in estimating plaintiff's damages on this account, estimated the hay consumed at each feed as substantially the same, and allowed the plaintiff only for the necessary feeding after the first. Appellant's assignments, therefore, relating to this matter will be overruled.

[5] The second paragraph of the court's charge, which we have hereinbefore quoted in discussing another topic, is objected to because it is insisted, in effect, that it fails to authorize the jury to offset the damages arising from a decline in the market, if any, by the increased weight of the cattle, arising from the additional feed and rest from Saturday to Monday; but it is to be noted that the section of the court's charge objected to specifically instructs the jury that it is to be taken in connection with special charge No. 8, also hereinbefore set out, given at appellant's request. And special charge No. 8, in the language of appellant's own selection, as we think sufficiently guarded any right of appellant growing out of the fact that the cattle took on additional weight. Moreover, in another section of the court's charge on the same subject (section 7), the jury were further instructed that:

"If you find and believe from the evidence that by reason and because of said cattle being held from Saturday and Sunday to Monday before being sold, that they regained weight and appearance which they had lost, if any, on account of such delay in transit, then the plaintiff could not recover on account of any shrinkage or bad appearance, if any, on account of such negligent delay. This section will however be considered in connection with special charge No. 8, requested and given you herein."

Any jury of the necessary qualification would have no difficulty in giving the charges referred to the proper consideration.

Appellant objects to the third paragraph of the court's charge, which reads:

[6] "If you find from the evidence that on account of such negligent delay, that said cattle shrank in weight and presented a gaunt appearance, and that such shrinkage and bad appearance, if any, affected their selling price on the market, then you will find for the plaintiff in such sum as will represent the difference on account of such extra shrinkage and stale appearance, between amounts which was received by the plaintiff for said cattle and what he would have received on account of such extra shrinkage and bad appearance, if any."

It is first insisted that the charge "mixes up the two items claimed by plaintiff—one on account of shrinkage and one on account of depreciation of appearance—in a way calculated to mislead the jury to the prejudice of defendant." And it is urged that "the items are pleaded separately, proved separately, and should be submitted separately and not mixed and commingled." We think,

however, that there is no real merit in this objection. The loss in weight and the loss by reason of the stale appearance of the cattle, if any, are so nearly similar in character and effect as to be substantially a common cause of loss or damages, and we fail to see in what way—and appellant points out no way—the combination of these elements in the charge could mislead a jury of average intelligence.

[7] Paragraph 3 of the court's charge is further objected to on the ground that it is on the weight of the evidence. This contention is based upon the assumption that "the practically undisputed evidence" is to the effect that the fact that the cattle were thin and gaunt would have a tendency to increase their market value, and it is urged that it is error to submit to a jury issues or phases of the case which find no support in the evidence. We cannot agree, however, with appellant's construction of the evidence on this subject. It is true that one or more witnesses who testified in behalf of appellant testified to the effect that a better price would be given for cattle sold before they were fed and watered than if sold immediately afterwards, the rule with purchasers being to make a deduction because of the extra weight caused by the fill, and no specific denial of this character of evidence was made by any witness; yet we think it is undoubtedly true that the evidence offered in behalf of appellee strongly tended to show that cattle subjected to delay, as the undisputed proof shows plaintiff's were, would lose in weight, and that such delay, with confinement in the cars, would also cause the cattle to present a bad appearance which affected their selling price.

[8] Nor do we think paragraph 3 of the charge is confusing, as urged in another assignment of error. The paragraph, when read in connection with other charges given by the court, we think unobjectionable.

[9] In paragraph 6 of the court's charge the jury were instructed to the effect that if the plaintiff's cattle could have been sold upon the Saturday of their arrival, and that there was no difference in the market on Saturday a. m. and in that of the afternoon, then the plaintiff would not be entitled to anything on account of the decline in the market from Saturday to Monday, nor in such event would he be entitled to recover anything for feed given to the cattle while they were being so held over. His only elements of damage, if any, in these events "would be on account of the extra shrinkage and bad appearance of said cattle, if any, on account of such delay." Appellant objects to this paragraph of the charge for the reason, substantially, that it authorized, in the contingencies presented, the imposition of damages because of the extra shrinkage and bad appearance of the cattle, whereas, as is insisted, in such events appellee would be entitled to no recovery whatever. But we think the evidence amply supports appellee's contention that the wreck south of Ft. Worth, and the consequent delay and confinement of the cattle for 12 hours, caused both loss in weight and a stale or depreciated appearance, and for these elements of damage it seems clear to us appellee would have been entitled to recover even though the cattle had been sold on Saturday's market immediately after their arrival in the Ft. Worth selling yards.

There are several other objections to the court's charge, but we think they have been sufficiently answered in what we have heretofore said. On the whole, we think the court in an exceptionally clear manner and with commendable care presented the case to the jury in his charges, and therein carefully guarded every right to which appellant was entitled under the evidence.

[10, 11] In the 13th, 14th, 15th, 16th and 17th assignments of error complaint is made of the appellee's failure to respond to questions tending to elicit the facts of numerous other shipments made by him from Mexico to Ft. Worth. Appellant's contention is, in substance, that it was entitled to the information thus sought, in order to show by the history of other shipments, if it could, that the cattle in question neither lost in weight nor in selling appearance; but these assignments have been considered, and we find no reversible error in the respects referred to. It is not even suggested that there is anything in the evidence from which to draw the conclusion that any one or more of appellee's other shipments of cattle from Mexico were subjected to the same conditions as the shipment in question. In the absence of such showing, it is clear that the result to other shipments would be incompetent, and it would, we think, be according appellant a greater right than it is entitled to, to reverse the judgment below, to the end merely that it might ascertain, by an examination of appellee, whether or not any other shipment had been subjected to similar conditions. The suggestion that the fact of his refusal to answer should have been permitted to go before the jury as affecting the credibility of the witness and the weight to be given to his testimony is answered by the conclusion that his testimony on the trial went to no seriously contested question, and that his refusal to answer, when considered together with the reasons assigned for the refusal, to wit, that the inquiries had nothing to do with the case, that the witness could not give full answers in the absence of his books, and that he did not care to disclose his business, would in no event have had any weighty tendency to discredit the witness or weaken his testimony as given on the trial.

[12, 13] Nor do we think the court erred, as complained of in the 18th, 19th, and 20th assignments, in admitting the answers to

cross-interrogatories propounded to the witness Roy C. Murphay. We will not lengthen our opinion by setting out the testimony objected to, but it has been examined, and we find that in some respects like evidence had been admitted without objection, in other respects the answers tended to contradict inferences to be drawn from the testimony of the same witness offered by appellant. So that, on the whole, we fail to find any reversible error in the matter.

We conclude that all assignments of error should be overruled, and the judgment affirmed.